DUBUQUE PRODUCTS, INC., Plaintiff,

v.

LEMCO CORPORATION, Hugh M. Lyman, Jr., Val R. Liljenquist, and Ray V. Liljenquist, Defendants.

No. C 200–62.

United States District Court
D. Utah,
Central Division.

Dec. 19, 1963.

A. Yates Dowell, and A. Yates Dowell, Jr., Washington, D. C., Marr, Wilkins & Cannon, Salt Lake City, Utah, for plaintiff.

Philip A. Mallinckrodt, Richard L. Bird, Jr., Salt Lake City, Utah, for defendants.

CHRISTENSEN, District Judge.

This cause came on regularly for trial before the court, sitting without a jury, on the 25th day of September, through the 3rd day of October, 1963. A. Yates Dowell, Jr., J. Thomas Greene, and Stephen A. West, appeared as counsel for the plaintiff. Philip A. Mallinckrodt and Richard L. Bird, Jr., appeared as counsel for the defendants. The court heard the testimony and examined proofs offered by the respective parties and heard arguments of counsel relative thereto on October 4, 1963. On the latter date the court rendered a tentative oral decision. Subsequently, with leave of court, various proposed findings of fact were submitted by the parties, together with briefs in support thereof. The court now being fully advised in the premises, makes and enters the following:

## FINDINGS OF FACT

*General*

1. Plaintiff is and at all times herein mentioned has been a corporation of the State of Iowa with its principal place of business in said State. The defendant Lemco Corporation is and during all times herein mentioned has been a corporation of a state other than the State of Iowa, with its principal place of business in the State of Utah. The defendant Hugh M. Lyman, Jr., was during all times material herein an officer and director of the defendant Lemco Corporation, and has been during all material times and is a citizen of the State of Utah. The defendant Val R. Liljenquist is an officer and director of the defendant Lemco Corporation and is a citizen of the State of Utah. The defendant Ray V. Liljenquist, during all times herein mentioned, was and is an officer and director of Lemco Corporation and a citizen of the State of Utah. The amount in controversy herein exceeds the sum of Ten Thousand Dollars ($10,000.00) exclusive of interest and costs. Jurisdiction is founded upon the federal patent laws and also upon diversity of citizenship.

2. Clarence E. Carlo is an officer and director of the plaintiff Corporation. Prior to October, 1954, he was employed as a salesman for a California corporation, the Acme Company. During the years 1953 to 1954, Carlo was instrumental in the sale of merchandise manufactured by this company which included so-called coilable partitions, some of which had a reversing gear mechanism. This structure was generally unsatisfactory and the operations of the company were not commercially successful. Carlo was dismissed from the company in October, 1954, as a result of a dispute over his salary. He sought work elsewhere and finally formed with two associates in April, 1955, the plaintiff corporation. Meantime, the Acme Company, with which Carlo had been associated, was verging on bankruptcy. Distributors who needed coilable partitions and had used the Acme Company as a source of supply then turned to Carlo. Carlo, working as an officer of plaintiff company, made a coilable partition of which he tested a prototype in his shop. Upon installing the prototype of a full-sized partition on a job, it was found that substantial difficulties in the operating mechanism occurred. From the forming of plaintiff company in April, 1955, until just prior to application for the original patent in suit, Carlo and his company made a number of partitions which it was necessary to sell in order to establish and confirm a satisfactory operation. Application for the patent in suit, which will be discussed in detail hereafter, was filed originally on December 29, 1958.

3. Defendant Hugh M. Lyman was employed by Z.C.M.I., a department store of Salt Lake City, Utah, from February, 1957, to February 15, 1958. Z.C.M.I. was a distributor for the plaintiff corporation, selling and installing the partitions manufactured by plaintiff. During the period of Lyman's employment by Z.C.M.I. he handled certain orders of plaintiff, including installing one of plaintiff's partitions at the L.D.S. Ogden Sixteenth Ward Chapel. Lyman had no knowledge of coilable partitions prior

to his employment by Z.C.M.I. In December, 1957, Lyman was shown at his request, ostensibly as a representative of plaintiff's distributor, installations of plaintiff's partitions in Chicago, of which he took motion pictures with the consent of Carlo. Shortly afterward, in December, 1957, Lyman went to plaintiff's plant without Carlo's knowledge or consent and misrepresented that he had Carlo's consent to take motion pictures within the plant for the alleged purpose of sales promotions for Z.C.M.I. Lyman took motion pictures within the plant, including a drilling machine and other manufacturing equipment. After taking the pictures in plaintiff's plant Lyman edited them, retaining approximately one-fourth. In the retained portion Lyman included pictures of plaintiff's drilling machine which was an essential instrument in the plaintiff's manufacturing process for the partitions, which drilling machine plaintiff had developed and which it considered a confidential part of its manufacturing process.

4. After leaving the employment of Z.C.M.I., Lyman, with the other individual defendants, made plans for the manufacture of coilable partitions through the defendant corporation. Most of their information concerning coilable partitions was obtained, as more fully hereinafter mentioned, from the plaintiff corporation, without the latter's consent and in many cases without the latter's knowledge. Lyman and Val R. Liljenquist examined plaintiff's installation at the Ogden Sixteenth Ward, and with this information and other information about plaintiff's operations which Lyman had obtained, the defendant company produced a substantially identical coilable partition at Kaysville, Utah. Subsequent to the defendant's Kaysville installation and commencing early in 1959, the defendant made other installations which were modified in certain respects. The necessity for these modifications arose from difficulties involved in defendant's installations. The operating mechanisms went through a series of modifications, including the use of a solenoid operating clutch. Defendant's present operating mechanism uses a double clutch mechanism in combination with other elements. In producing coilable partitions patterned after those of plaintiff the defendant company also relied upon information obtained from a former employee of the plaintiff, Patrick C. Ochs, who from September, 1959, to February, 1961, served as plaintiff's draftsman and later as its production manager. Oaks reproduced for the defendant company a substantial copy of plaintiff's drawings of its operating mechanism, including the double clutch aforesaid.

*Additional Findings as to Validity and Infringement of Patent (First Claim Alleged in Second Amended Complaint).*

5. Plaintiff is the owner of the Carlo patent in suit, Re. 25,422, which issued July 23, 1963 on an application filed January 8, 1963. The original patent No. 2,978,019, issued April 4, 1961 on an application filed December 29, 1958. The reissue patent contains the identical four claims of the original patent and an additional claim, No. 5. The patent is directed to a coilable partition and operating means therefor, including the combination of elements recited in the aforesaid claims. Claims 1 to 4 define the operating means and recite inter alia a fixed and movable block takeup mechanism. Claim 5 does not recite a fixed and movable block.

6. The file of the application resulting in the Carlo patent 2,978,019 reveals that none of the four claims allowed is identical with the six claims initially filed with the application. Following rejection of the initial six claims based upon prior art patents to Grant, et al. 1,-621,717 and Rojas 1,147,188, incidental reference being made to Drew 1,295,712, the applicant submitted substitute Claims 7 and 8. Accompanying these claims the attorney stated, inter alia:

"Neither of these patents [Grant or Rojas] nor the combination thereof teach applicant's inventive concept of a reversible drive in combination

with a coilable door for moving the door out by a single cable and leaving the center post free to rotate and when the motor is reversed the center post is driven and the block and tackle takes up the slack in a single cable."

Responsive to the foregoing amendment the examiner indicated allowance of Claims 7 and 8, with minor clarification of Claim 7. Subsequent thereto the applicant, through his attorney, submitted additional Claims 9 and 10, which were also allowed. Claims 7–10 became Claims 1–4, of the issued patent.

7. Defendant company relies for its claim of non-infringement on the recitation in Claims 1 to 4 of a block and tackle takeup mechanism. Although in its first version of the coilable partition defendant used a block and tackle takeup, in subsequent versions it substituted a drum takeup as a means of winding the cable and storing it in connection with the operation of the partition. The proceedings in the Patent Office do not reveal that the patentee Carlo ever proposed a claim of a scope commensurate with that now asserted which was rejected. There is no file wrapper estoppel to the application of the doctrine of equivalents in this case. However, the drum takeup mechanism is not the equivalent of a block and tackle takeup mechanism. Although infringed in spirit, Claims 1–4 have not been infringed by coilable partition mechanisms manufactured and sold by defendants.

8. Defendants for their claim of invalidity of the patent in suit rely upon the patents cited by the examiner and upon the following patent and publication:

U. S. Patent, J. W. Hoffman No. 392,610 issued November 13, 1888

Book "507 Mechanical Movements" dated 1868, pages 16–19 and 26–27.

9. The Hoffman patent entitled "Mechanical Movements" discloses an arrangement of machinery, including gears mounted on shafts in such a manner that alternating rotary movement, i. e., clockwise and counterclockwise, applied to a rotary member at one end of the mechanism drives through the shafts and gears mentioned a pulley at the opposite end, the pulley continuing to rotate in the same direction regardless of the direction of rotation applied at the other end. In plaintiff's patent a rotary force applied to a gear on one portion of the shaft selectively drives another shaft for winding the coilable partition in a coil or a takeup mechanism for withdrawing the partition from the coil, depending on the direction of rotary motion applied to the driven gear. The invention disclosed by the Hoffman Patent was not applied in an analogous art.

10. The publication "507 Mechanical Movements" discloses various arrangements of shafts, gears and clutches, none of which bears more than a remote similarity to the patent in suit, and was not applied in any analogous art.

11. The patent in suit is not anticipated, nor would it have been obvious to a person having ordinary skill in the art, at the time the invention was made in view of the patents cited by the examiner nor in view of either or both of the additional references cited by defendants, nor in view of the prior art.

12. Defendants have alleged that plaintiff has been guilty of fraud in not advising the Patent Office of the aforesaid patent and publication and of plaintiff's sales of coilable partitions which occurred more than one year before the application date of December 29, 1958. Neither the patent nor the publication is so similar to plaintiff's patent that, assuming knowledge of these by plaintiff, plaintiff had a duty to disclose them to the Patent Office. There was no public use or sale of the patented partition more than a year prior to the application date. Even if the earlier sales are viewed as within the proscription of the statute, 35 U.S.C. § 102(b), the differences between the devices which were sold and those of the patent are of such substantial nature that plaintiff was not obligated to divulge these to the Patent Office.

13. Plaintiff's double clutch reversing mechanism in combination with its cable takeup mechanism, as recited in Claims 1–4, possessed novelty, usefully solved long existing problems in the coilable partition field and constituted patentable invention.

14. Claim 5 of the reissue patent is directed to essentially the same combination of elements as Claims 1–4. However, Claim 5 does not recite a block and tackle mechanism but instead uses the broader terminology "partition extending means connected to said second freely rotatable means". This language clearly covers the drum takeup mechanism employed by defendants and, unless plaintiff is estopped from so claiming, Claim 5 of plaintiff's patent is infringed by the accused device of the defendants.

15. In the application for the reissue patent, plaintiff being the assignee of said patent, Carlo sought to amend the specifications, as well as Claim 5 of the original application. The original specifications were specifically limited in reference to the partition extending means to the fixed and movable block mechanism. The drawing (Fig. 1) submitted as a part of the original application illustrated the fixed and movable block mechanism. In the application for the reissue patent, Carlo apparently did not seek to change this drawing but asked to amend the specifications to refer to "a conventional cable take-up and drive mechanism * * * as an example, the sleeve 47 may have a cable take-up drum operated by rotation of such sleeve or, as illustrated, the sleeve may have a sprocket 48 which engages and drives a chain" connected with the illustrated mechanism. Describing the functioning of the device, the proposed amendment to the specifications would have specifically referred to a "cable take-up" rather than to the fixed and movable block mechanism. The application for reissue also would have had Claim 5 refer to "a cable take-up and drive means", rather than to a fixed and movable block mechanism. In the oath accompanying his application for reissue, Carlo stated that the original application included a limitation requiring a conventional block and tackle arrangement for a cable takeup mechanism, while the structure would be operative using any conventional cable takeup mechanism which could be operated to pull one or more cables. In the examiner's interim ruling on the application for reissue, he stated among other things:

"The inclusion of 'a conventional cable take-up and drive mechanism * * * the sleeve may have' appears to be new subject matter. Cancelation is required. The fixed and movable block arrangement depicted in the drawings and described in the specification of the original application is nowhere referred to as a 'conventional cable take-up * * *'. Reference to 'a cable take-up drum' is obviously new matter."

The applicant then indicated a willingness to remove all reference to a drum from the application for reissue, but asserted that the block and tackle structure as illustrated and described is a "conventional" takeup and drive mechanism and that to merely indicate that such is conventional was not introducing new matter. The examiner, however, ruled that the original disclosure indicated an intention by the applicant to describe non-conventional means for the cable takeup device. The examiner indicated that while a block and tackle per se was a well known implement for accomplishing mechanical advantage, as applied in the specifications conventionality was negated. Thereupon the applicant amended the specification to change "conventional cable takeup and drive" to "partition extending mechanism" and to delete from the specification "as an example, the sleeve 47 may have a cable takeup drum operated by rotation of such sleeve" (in addition to the means illustrated). Claim 5 was also made generally to refer to a "partition extending means". It is clear that Carlo's intention in seeking the reissue was to obtain a claim adequate to cover either the cable takeup and drive means or the fixed and movable block mechanism, that the examiner was not

mislead as to this intention or otherwise and that reissue Claim 5 as approved literally reads upon either mechanism, Claim 5 in the reissue referring generally to a "partition extending means connected to said second freely rotatable means", and, in describing the function, referring to the drive shaft as being rotated so that the clutch will engage the second freely rotatable means to operate "said partition extending means and cause the partition to be extended". The examiner, in considering and allowing the application for reissue, relied upon the U. S. Patents to Wardlaw, 2,934,134, of April 26, 1960 and Segal, 2,012,437, of August 27, 1935, and considered the prior art cited in the application of the original Carlo patent, 2,978,019.

16. Plaintiff's application for its reissue patent Re 25,422 was made without any deceptive intention, and by reason of the patentee's claiming less than he had a right to claim in the original patent.

17. The feature upon which defendant company based its claim of no infringement, namely its use of a drum takeup instead of a block and tackle, was incorporated by defendant company prior to the issuance of the original patent. Subsequent to the issuance of the patent and prior to its reissuance defendant company obtained and relied on advice of counsel that its coilable partition was not an infringement of the original patent. These facts will receive consideration in determining the extent and terms of the defendant company's intervening rights as the Court may deem equitable for the protection of defendant's investment made or business commenced prior to the issuance of the reissue patent, 35 U.S.C. § 252, viewed in the light of the tortious action of the defendant. The court does not feel itself now sufficiently advised by evidence to determine the extent of the defendants' intervening rights, particularly in view of the stipulation of the parties that questions of damage should be reserved until an interlocutory determination of liability. While the matter of intervening rights relates also to the question of liability, equitable consid-

erations are so interwoven with the issue of damages, as well as with the question of intervening rights, as to lead the court to believe that further findings on the latter matter should be deferred until the final hearing as to damages.

*Additional Findings with Reference to Trade Secrets (Second Claim Alleged in Plaintiff's Second Amended Complaint).*

18. Defendant Hugh M. Lyman, Jr. was in a confidential relationship with plaintiff from February, 1957, to February 15, 1958, as an employee and department manager of Z.C.M.I., which was a franchise distributor for plaintiff for the sale, distribution and installation of plaintiff's side coiling partitions in the western part of the United States. The plaintiff took no special precautions with reference to information furnished its distributor to protect the secrecy of such information, but largely depended upon the established experience and reputation of the Z.C.M.I. as a reputable distributor and the general custom in the trade to utilize such information as was furnished for the interest of the manufacturer and the distributor only in promotion and support of the manufacturers product. Under the circumstances of this case, both Z.C.M.I. and Lyman knew and understood that information hereinafter mentioned concerning the prices, practices and business, as well as the product of the plaintiff, was furnished by plaintiff to the distributor and to its employees solely for the purpose of advancing the mutual interests of the manufacturer and distributor and that it should not be disclosed or utilized for any other purpose. Plaintiff supplied the said Z.C.M.I. detailed information of this type concerning its coilable partition, which information was received and handled by the defendant Lyman. This information included sales and architectural brochures, shop drawings, installation drawings, plans and instructions, pricing information, pictures and other sales material.

19. In December 1957, the defendant Lyman by deception gained entrance into plaintiff's factory in Dubuque, Iowa and took moving pictures therein, including detailed pictures of plaintiff's drilling machine. Access to the plant was gained by the false representation that Lyman had permission to take such pictures and by the false representation that such were to be used for architectural sales promotional purposes through Z.C.M.I. on behalf of plaintiff. This was at a time when the defendant Lyman knew that the General Manager of the plant, Clarence E. Carlo, would not be there. The plant itself was not open to the public; there were "no admittance" signs posted and other precautions taken to withhold information and materials within the plant from the view of the public.

20. The plaintiff's drilling machine was developed by Clarence E. Carlo over a period of time commencing sometime in 1955. As it existed in December 1957, the machine was an inexpensive but workable apparatus which by combination of parts operated efficiently as a single-purpose machine, devoted solely to the specific operations appropriate to the fabrication of coilable partitions.

21. The defendant Lyman purposely retained for his own use the portion of the moving pictures he had taken relating to plaintiff's drilling machine when he left the employ of Z.C.M.I. in February 1958.

22. In the latter part of 1958 the defendant Lyman exhibited the moving picture film taken by himself of plaintiff's drilling machine to the defendant Val Liljenquist for the purpose of organizing ideas for the development of a drilling machine for Lemco Corporation. Blown-up reproductions of a portion of the film were made by the defendants Lyman and Val Liljenquist, and the pictures as well as the film were retained and used by them in 1958 and 1959.

23. A drilling machine was developed on behalf of the defendant Lemco Corporation by the defendants Lyman and Val Liljenquist patterned after and based upon the plaintiff's drilling machine. While plaintiff's drilling machine did not contain patentable or wholly novel features it was the result of development and experimentation by plaintiff and its employees over a substantial period of time and represented the results of their special knowledge and experience. The information obtained by the defendants through Lyman's deception and subterfuge, in violation of his confidential relationship toward plaintiff, caused the plaintiff to lose and enabled the defendants to gain a substantial competitive advantage and enabled the defendant to develop its drilling machine much more easily and much less expensively than it could have otherwise developed one. The Lemco drilling machine as developed in the latter part of 1958 was basically similar to the plaintiff's drilling machine and was the substantial product of information, ideas and photographs obtained by the defendant Lyman while at plaintiff's plant at Dubuque, Iowa, in December 1957, as aforesaid. The defendant Val Liljenquist was aware of the source of the pictures and ideas and he assisted materially in the procuring of materials for fabrication of the drilling machine for Lemco Corporation.

24. At the time the defendants Lyman and Val Liljenquist developed the Lemco Corporation drilling machine they did not possess the knowledge, skill and experience required to build a machine like plaintiffs without recourse to the information concerning plaintiff's machine thus obtained by Lyman, nor without such information did they have sufficient knowledge, skill and experience to design a machine for fabrication by others. To have a machine designed and built by others to perform the function of its drilling machine would have required considerable experimentation and investigation by the said defendants or others at their request and would have cost an amount several times greater than the cost of Lemco's machine as so developed and built by defendants upon the information thus procured from plaintiff. At the time the defendants Ly-

man and Val Liljenquist developed the Lemco Corporation drilling machine there was not available on the market a single purpose drilling machine appropriate for the specific operations of fabricating coilable partitions, nor could any multiple purpose machine have been adapted to the coilable partition operations without substantial additional expenditure.

25. The said Lemco Corporation drilling machine has been utilized by the defendants in the fabrication of all coilable partitions made and sold by Lemco Corporation.

26. By telephone conversation in March 1958, and by letters on January 6, 1959 the defendant Lyman falsely represented to Clarence E. Carlo and counsel for plaintiff that he had returned all of the pictures to Z.C.M.I.

27. Patrick C. Ochs was employed by plaintiff as a draftsman and Production Manager from September 1959 to February 15, 1961. Mr. Ochs was in a confidential relationship with plaintiff during that period of time and was intimately acquainted with all aspects of plaintiff's coiling partition, and particularly the transmission mechanism, which was regarded by plaintiff and known by Ochs as confidential and in the nature of a trade secret.

28. Patrick C. Ochs was in contact with the defendant Val Liljenquist on February 7, 1961 with reference to employment, and was transported to Salt Lake City immediately thereafter by airplane at the expense of Lemco Corporation. Discussions with the said Ochs were had by defendants Lyman and Val Liljenquist, and an arrangement was entered into with the said Ochs to relocate him and his family to Salt Lake City, Utah, as an employee of Lemco Corporation. During this interim period, expenses of Mr. Ochs were paid by Lemco Corporation, and advances of money were made. Official employment of Patrick C. Ochs by Lemco Corporation commenced March 15, 1961 and he worked for Lemco Corporation as Production Manager in charge of coilable partitions until April 1962.

29. Plaintiff's coilable partition reversing mechanism, embracing the double clutch in combination with other elements, as revealed in transmission drawings comparable to the patented invention drawing, was confidential information in the nature of a trade secret from its development in the year 1958 to the issuance of a patent relative thereto in April 1961.

30. Said coilable partition reversing mechanism during said period was installed in certain public buildings by the plaintiff but was so covered and enclosed as not to be obvious to the public and the detailed design and functioning of the mechanism, by reason of the manner of installation and the efforts of plaintiff to avoid general dissemination to the public or to competitors, was not readily available to the public or to competitors. The drilling machine was treated as confidential by the plaintiff as to all parties outside of its organization and the plaintiff afforded no reason, even though it did not give specific instructions to its employees to the contrary, for any employee to assume that he was free to disclose information concerning the drilling machine to competitors or other members of the public. In any event, defendants had reason to know, and knew, that information concerning the drilling machine was regarded as confidential by the plaintiff and was supposed to be treated as such by plaintiff's employees. Plaintiff's employees and also the defendants had reason to know, and knew, that prior to the issuance of the patent thereon the plaintiff's coilable partition reversing mechanism was confidential and was supposed to be treated as such by plaintiff's employees.

31. Transmission drawings embracing the plaintiff's double clutch reversing mechanism were substantially reproduced by Patrick C. Ochs for Lemco Corporation. There is uncertainty as to the exact source of Ochs' detailed information which was so reproduced or whether the finished reproductions were supplied

to defendants by Ochs before or after the plaintiff's original patent issued. But it is established by a preponderance of the evidence that Ochs was hired, among other things, for the purpose of making such disclosures to the defendants for their competitive advantage prior to the issuance of the patent and that the information he disclosed was obtained by him and intended to be made available to the defendants without reference to the issuance of any patent.

32. At the time the double clutch reversing mechanism of plaintiff was set forth in transmission drawings developed by Patrick C. Ochs for the defendant corporation, and prior thereto, Lemco Corporation was experiencing substantial breakdowns in its clutch mechanism then in use. Accordingly, several unworkable so-called solenoid type clutch units were replaced with the new double clutch reversing mechanism which was fabricated from the drawings produced by the said Ochs. All of the coilable partitions fabricated by Lemco Corporation after May 1961, have embraced a virtually identical duplication of the plaintiff's double clutch reversing mechanism as an integral part of the Lemco transmission mechanism.

33. The defendants Lemco Corporation, Hugh M. Lyman, Jr., and Val R. Liljenquist, misappropriated plaintiff's confidential information relating to its drilling machine and double clutch transmission mechanism through subterfuge or the employment of Ochs for such purpose as the case was. The eventual availability of this information as a matter of probability through other means and some uncertainty in the record as to the precautions which the plaintiff utilized generally in assuring the preservation of these matters technically as trade secrets for a continuing substantial period of time in connection with other confidential matters hereinafter referred to, have led the court to believe that it should consider the utilization of this confidential information and the other matters of unfair competition hereinafter referred to together, and should realistically work out an overall remedy to fairly compensate and protect plaintiff for and from the improper interference with its business, with due regard for the said misuse of confidential information within the limitations indicated and the other unfair and unlawful competition as hereinafter found.

*Additional Findings as to Unfair Competition (Third Claim Alleged in Plaintiff's Second Amended Complaint).*

34. As hereinabove referred to defendant Hugh M. Lyman, Jr., was in a confidential relationship with plaintiff from February 1957, to February 15, 1958, as an employee and department manager of Z.C.M.I., which was a franchise distributor for plaintiff for the sale, distribution and installation of plaintiff's side coiling partitions in the western part of the United States from sometime in 1956 to January 21, 1959. Plaintiff supplied the said Z.C.M.I. detailed information concerning its coilable partition during this period of time, which information was received and handled by the defendant Lyman. This information included sales and architectural brochures, shop drawings, installation drawings, plans and instructions, pricing information, pictures and other sales materials.

35. In December, 1958, the defendant Hugh M. Lyman, Jr., while in a confidential relationship with plaintiff, by deception and improper motive took moving pictures of plaintiff's coilable partition installations at Chicago, Illinois. Also in December 1957, the defendant Lyman by deception gained entrance into plaintiff's factory in Dubuque, Iowa and took moving pictures of a coiling partition, including the mechanism thereof, then under fabrication, as well as pictures of various manufacturing processes of the plaintiff, including detailed pictures of plaintiff's drilling machine as more particularly above found. In January 1958, plaintiff sold a coilable partition through Z.C.M.I., handled by the defendant Lyman to the Ogden 16th L.D.S. Wardhouse

in Ogden, Utah, which partition was installed under the direction of the defendant Lyman. Sometime after the said partition was installed, the defendant Lyman took moving pictures thereof, including close-up shots of the mechanism. The Ogden installation pictures were taken without the knowledge or permission of plaintiff. The Chicago installation pictures were allegedly taken for architectural sales promotional purposes on behalf of plaintiff but were never used for that purpose. In fact, these pictures were intentionally retained and used by the defendant Lyman for his own purposes after he left the employ of plaintiff's distributor, Z.C.M.I., on February 15, 1958, in the promotion of a coilable partition to be developed by Lyman in competition with plaintiff's coilable partition.

36. The defendant Lyman purposely retained the moving pictures which he had taken at plaintiff's plant when he left the employ of Z.C.M.I. on February 15, 1958. He retained these items for over a month, and upon requests from Clarence E. Carlo and employees of Z.C.M.I. on behalf of plaintiff returned portions thereof to Z.C.M.I. in the latter part of March 1958. At least segments of the pictures which had been taken relating to plaintiff's drilling machine and the plaintiff's Ogden 16th Ward installation in fact had not been returned to Z.C.M.I., and such were purposely retained by the defendant Lyman for his own use.

37. On February 10, 1958, the defendant Lyman, while in a confidential relationship with plaintiff, by deception and with the intent to ascertain for his own purposes competitive pricing information of the plaintiff not otherwise available, obtained information from the plaintiff with reference to price quotations as to several sizes of Dubuque coilable partitions.

38. On or about March 1, 1958, the defendant Lyman showed portions of the moving pictures he had previously obtained of plaintiff's coilable partition installation to an architect in order to promote the sale and architectural accept-ance of Lyman's then non-existent coilable partition; the said films were shown to Ray V. Liljenquist for the purpose of encouraging the said Liljenquist to finance the production of such a partition.

39. Between March and June 1958, the defendant Lyman misappropriated designs and plans of the plaintiff in the development of designs and plans for Lyman Engineering and Manufacturing Company, a predecessor corporation to the defendant Lemco Corporation.

40. Between June and August 1958 the defendants Lyman and Val Liljenquist arranged for construction of a manufacturing plant which contained custom features appropriate for the fabrication of coilable partitions and the said defendants had conversations, carried on correspondence, and printed drawings previously developed by the defendant Lyman for Lyman Engineering and Manufacturing Company with regard to coilable partitions.

41. On or about August 1, 1958 the defendant Lemco Corporation was organized, with the defendants Lyman and Val Liljenquist as the substantial equal co-owners. On or about September 1, 1958 Lemco Corporation leased the newly constructed plant, and the defendants Lyman and Val Liljenquist formulated more specific plans for the development, promotion, sales and manufacture of a coilable partition in competition with plaintiff's coilable partition.

42. Prior to development of coilable partition sales literature of the defendant Lemco Corporation, the defendant Lyman distributed drawings which had been substantially copied from plaintiff's drawings on behalf of Lyman Engineering and Manufacturing Company in order to encourage sales promotion for Lemco Corporation and it appears probable that an earlier sales piece containing a descriptive analysis and drawings similar to Lyman Engineering and Manufacturing Company drawings which had been substantially copied from plaintiff's literature was printed on behalf of Lem-

co Corporation prior to the distribution of the Lemco literature which was available for illustration at the trial.

43. The first published literature of Lemco Corporation of which copies were available in these proceedings was printed and distributed by January 1, 1959. Drawings and materials used in the said literature were adapted from drawings which had previously been printed on behalf of Lemco Corporation, but which were altered so as to conceal and make less obvious direct copying from Dubuque literature.

44. The defendants Lemco Corporation, Lyman and Val Liljenquist misappropriated designs and plans of the plaintiff in the development of designs and plans for Lemco Corporation, which designs and plans, though partially altered for concealment purposes, were used in drawings, shop drawings, sales literature and otherwise, which were printed and distributed for Lemco Corporation.

45. Prior to fabrication of the first coilable partition by Lemco Corporation, the defendant Lyman falsely represented himself and his company as having constructed coilable partitions, and as being in the business of manufacturing coilable partitions and he used literature, pictures and other materials of the plaintiff or materials adapted for use by Lemco Corporation which were copied from plaintiff's materials in furthering such false representations. The defendant Lyman falsely represented a Dubuque coilable partition installation to be a product of his or his company's own manufacture, and thereby conducted a sales demonstration in order to promote architectural acceptance of a coilable partition yet to be developed by himself or Lemco Corporation.

46. The defendant Lyman purposely retained a portion of the moving pictures which he had obtained by deception while at the plaintiff's plant in Dubuque, Iowa in December 1957 relating to the plaintiff's drilling machine, and exhibited such pictures to Val R. Liljenquist for the purpose of developing a drilling ma-

chine for Lemco Corporation. In late 1958 and early 1959 the Lemco Corporation developed a drilling machine which was patterned after and copied from plaintiff's drilling machine in all substantial particulars.

47. The defendants appropriated installation data, know-how and technique of the plaintiff in order to install the first Lemco Corporation coiling partition, and later partitions. The defendants Lyman and Val Liljenquist copied a mechanism of the plaintiff and all features thereof, at the Ogden 16th Ward in Ogden, Utah during 1958, which mechanism and installation had been sold and installed under the supervision of the defendant Lyman while he was in a confidential relationship with the plaintiff. The copying was made possible by gaining access to the installation through the use of tools to remove paneling, and the use of special lighting. The mechanism was not obvious to the public. The copying was accomplished by the making of sketches by the defendant Lyman and the taking of pictures by the defendant Val Liljenquist. All of this information was used by the defendants Lyman and Val Liljenquist to pattern and produce a substantially identical mechanism for use in the first mechanism to be constructed by Lemco Corporation in competition with plaintiff, namely the installation of the Kaysville 4th and 5th L.D.S. Ward, in Kaysville, Utah, which was installed within a month after invoicing on February 13, 1959.

48. The defendants engaged in unfair sales representations and unwarranted use of plaintiff's reputation in that sales representatives of Lemco Corporation were instructed to represent the Lemco "Porta Wal" partition and the Dubuque "Coil-Wal" partition as being substantially identical both as to appearance and mechanism operation. The defendants made use of the plaintiff's reputation by use of the plaintiff's trade name, "Coil-Wal" with reference to the defendant Lemco Corporation's literature and otherwise. The trade name "Coil-Wal" has been widely publicized by plaintiff and

was well known in association with coilable partitions.

49. In February and March, 1961, the defendants entered into an agreement with and later employed an ex-employee of plaintiff, Patrick C. Ochs, directly after Ochs had left plaintiff's employ as a result of an argument in which Ochs had felt humiliated in the presence of third persons. Defendants knew that Ochs had held a responsible position with plaintiff, and that he had access to plaintiff's technical data and information. The defendants undertook to obtain from Ochs and in fact did obtain from Ochs detailed information concerning all aspects of plaintiff's coilable partition, including specific information as to plaintiff's reversing clutch mechanism, plaintiff's costing and pricing system, plaintiff's distributors, plaintiff's source of supply and otherwise. The defendants, assisted by Patrick C. Ochs, copied plaintiff's double clutch reversing mechanism and patterned the Lemco Corporation mechanism after that of the plaintiff as aforesaid. The defendants via Patrick C. Ochs copied plaintiff's costing system and utilized information of the plaintiff in developing a new cost system which was the basis for a new pricing formula developed by plaintiff.

50. Defendants purposely solicited distributor representatives of plaintiff and attempted to induce them and did induce some of them to represent Lemco Corporation. W. C. Hixson Company of Texas was a distributor representative of plaintiff for the sale, distribution and installation of plaintiff's side coiling partitions in Texas and surrounding territory from 1956 to 1960. Plaintiff supplied the said W. C. Hixson Company with confidential and other detailed information during this period of time. Defendants induced said distributor to represent defendants. Thereafter, the defendants obtained information, drawings, correspondence, installation materials and other data of the plaintiff which had been transmitted by the plaintiff to W. C. Hixson Company when that company was in a confidential relationship with plaintiff. B. F. Shearer Company of Washington and California was a distributor representative of plaintiff for the sale, distribution and installation of plaintiff's side coiling partitions in the states of California and Washington from December 1957 to April 1961. Plaintiff supplied the said B. F. Shearer Company with confidential and other detailed information during this period of time. Defendants induced the said company to represent Lemco "Porta Wal" partition, which relationship existed during a substantial portion of the period that the said company was supposedly representing plaintiff.

51. Arnold Collard was in a confidential relationship with plaintiff as an employee for Z.C.M.I. in its Contract Furnishings Department as a salesman of plaintiff's coiling partitions, with particular emphasis upon school sales, from the Fall of 1958 to December 1959. During a portion of the same period of time, namely from October 14, 1959 to December 15, 1959, the said Arnold Collard was an employee of defendant Lemco Corporation and had an arrangement to act as a salesman for the defendant Lemco Corporation. During the entire period of his employment, the said Arnold Collard had access to confidential information of the plaintiff in the possession of Z.C.M.I., including bid information.

52. Certain other individuals, including Gary Sheffield from September 1958 to January 1960, LaRae Funcannon during the year 1958, Paul Hintze during a part of 1956 and 1957, and Wilford B. Lindman from early 1957 to October 9, 1961 when he was fired for dishonesty, were in a confidential relationship with the plaintiff as employees of Z.C.M.I. in its Contract Furnishings Department. During the entire period of employment of each of the said individuals, each had access to confidential information of the plaintiff in the possession of Z.C.M.I., including bid information. There was a "leak" of information from a source or sources within Z.C.M.I. to the Lemco Corporation, and information which otherwise would have been available only to

Z.C.M.I. employees was made available to the defendants. Defendant Lemco Corporation employed various individuals who had previously occupied a confidential relationship with plaintiff as employees of Z.C.M.I.:

Hugh M. Lyman, Jr. from inception thereof in August 1958 to date;

Arnold Collard from October, 1959 to September 1961 and from approximately June 1963 to date;

Gary Sheffield from February 1, 1960 to February 1961;

LaRae Funcannon from late 1959 to December 1961;

Wilford Lindman during the summer of 1958 as an independent contractor for the installation of heating and ventilating apparatus at the Lemco plant at 5251 South Second West, Murray, Utah;

Paul Hintze during the year 1958 and at later times.

Defendants, through contracts at Z.C.M.I. and otherwise, prevented plaintiff from submitting bids and from obtaining successful bids as to specific coilable partition jobs which plaintiff had attempted to bid through Z.C.M.I.

53. The coilable partition developed by defendants is so similar in design, appearance and otherwise to plaintiff's product as to be confusing and has resulted in actual confusion between the products as to packaging, general appearance and detail of design.

54. The defendants copied a pass door concept which had been developed by plaintiff, this confidential design and know-how relative thereto having been revealed and developed for defendants by Patrick C. Ochs.

55. It is now apparent that defendants Lemco Corporation and Hugh M. Lyman, with the cooperation of Val R. Liljenquist, purposely and intentionally set out to obtain all feasible benefits from the form and substance of plaintiff's coilable partition business, and succeeded in copying and appropriating the substance of plaintiff's plans, reputation, fabrication machinery, clutch mechanism and other developments of plaintiff, much of which was accomplished by deception, circumvention and concealment. Plaintiff did not have such knowledge of the copying and misappropriations by defendants of plaintiff's confidential information or of the unfair competition herein adjudged sufficiently to have placed it on notice thereof until recently and within the applicable statute of limitations, the facts relative to these matters having been largely concealed by defendants and the unlawful and actionable nature of their individual and cumulative effect not having become known or reasonably apparent theretofore.

56. Said defendants intend to continue the manufacture and sale of coilable partitions in direct competition with plaintiff by the use of similar means and methods many of which they still insist constitute acceptable standards of competition; and unless restrained said defendants will continue to do so and to utilize methods, materials, plans and ideas misappropriated from plaintiff to further such competition.

From the foregoing Findings of Fact the court now makes and enters the following:

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties; jurisdiction over the subject matter of this action exists under 28 U.S.C. §§ 1332, 1338, and 35 U.S.C. § 281.

2. The Carlo patent 2,978,019, issued April 4, 1961, was a valid patent and was owned by the plaintiff, Dubuque Products, Inc.

3. Plaintiff's original patent 2,978,019, prior to its surrender, has not been infringed by defendants since Lemco Corporation's use of the block and tackle takeup in the combination was prior to the issuance of the patent 2,978,019. Its use thereafter of a different form of

takeup in the same combination has not infringed Claims 1–4 of the plaintiff's patent.

4. The Carlo patent Re. 25,422 issued July 23, 1963, is a valid patent and is owned by the plaintiff Dubuque Products, Inc.

5. Claim 5 of plaintiff's patent Re. 25,422 clearly reads on defendants' cable take-up drum in the combination claimed. The validity of that claimed combination is not free from doubt in view of the history of the reissue Patent in the Patent Office. While the court has found, and the theory of the plaintiff in applying for the reissue patent was, that defendants' cable take-up drum mechanism and plaintiff's block and tackle mechanisms were not equivalents for the purpose of interpreting the scope of plaintiff's original patent, it also seems evident that the very purpose of the allowance in the Patent Office of the reissue Claim 5 was to expand that claim beyond the equivalences that could have been recognized under the original patent with particular reference to the partition extending means; otherwise there would seem to be no purpose for the reissue of the patent. And whether the refusal of the examiner to permit reference in amended specifications or in the amended Claim 5 to specify a cable take-up drum or other conventional mechanism was because such mechanism in combination with plaintiff's other elements was deemed unpatentable or because it was technically new matter not reflected in the illustration of the original patents or other portions of the record remaining unamended, is equivocal. The ambiguity in the record on the question of file wrapper estoppel is compounded by the subsequent allowance of a reference to a partition extending means broader than a mere conventional means and reading clearly upon the combination utilized by defendants. In view of all of the circumstances I am of the view and so conclude that the claimed file wrapper estoppel has not been established with sufficient clarity to sustain defendants' burden of overcoming the presumption of the validity of plaintiff's reissue patent in accordance with its terms. It is therefore further concluded that said reissue patent has been and is being infringed by defendant Lemco Corporation as to Claim 5. It is apparent as inherent in its position on the patent phase of this case that Lemco Corporation intends to continue to do so unless restrained by the court.

6. Defendant Lemco Corporation is entitled to the benefit of the doctrine of intervening rights as to Claim 5. The court concludes in this connection that it can best fashion final provisions in recognition of these intervening rights pursuant to Section 252 of Title 35 of the United States Code, after a further hearing is had on the issue of damages and related relief. Consideration of any possible injunctive relief based particularly upon the infringement of Claim 5 will be held in abeyance until such further hearing.

7. Plaintiff has not been guilty of fraud in applying for its original or its reissue patent.

8. The circumstances surrounding the application for plaintiff's reissue patent comply with the requirements of 35 U.S.C. § 251.

9. The complaint as to patent infringement should be dismissed as to the individual defendants Hugh M. Lyman, Jr., Val R. Liljenquist and Ray V. Liljenquist.

10. Neither plaintiff nor any defendant has been guilty of false marking under the provisions of 35 U.S.C. § 292.

11. Hugh M. Lyman, Jr., was in a confidential relationship with the plaintiff from February 1957 to February 15, 1958. The drilling machine of the plaintiff as it existed in December 1957 constituted confidential information in the nature of a trade secret. The double clutch reversing mechanism developed by plaintiff, as it was used in conjunction and in combination with other component parts of plaintiff's coilable partition mechanism, was confidential information in the nature of a trade secret from the

date of its development in 1958 until the date of patent thereon in April 1961.

■ 12. Defendant Hugh M. Lyman, Jr. breached his confidential relationship with the plaintiff by obtaining pictures of plaintiff's drilling machine with intent to use the same to the detriment of the plaintiff and in unfair competition with it; and the defendants Lyman, Val R. Liljenquist and Lemco Corporation misappropriated plaintiff's confidential information relating thereto and unfairly competed with plaintiff by utilizing information and pictures wrongfully obtained by the defendant Lyman to develop a substantially similar drilling machine for the defendant Lemco Corporation.

13. The defendant Patrick C. Ochs was in a confidential relationship with the plaintiff from 1958 to February 1961. The defendants Lyman, Val Liljenquist and Lemco Corporation caused the said Patrick C. Ochs to breach his confidential relationship with plaintiff by revealing confidential information in the nature of a trade secret to defendants relative to the double clutch transmission reversing mechanism of plaintiff, and the said defendants misappropriated plaintiff's confidential information relating thereto by causing the said Ochs to copy and reproduce drawings which enabled defendants to fabricate a substantially similar double clutch transmission reversing mechanism for the defendant Lemco Corporation.

■ 14. Defendants Lemco Corporation, Hugh M. Lyman, Jr. and Val R. Liljenquist are guilty of purposeful and intentional breach of plaintiff's confidential information in the nature of trade secrets and its misappropriation relating to plaintiff's drilling machine and its double clutch reversing transmission mechanism, which breach and misappropriation were accomplished by deception, circumvention or concealment.

15. The defendants Lemco Corporation, Hugh M. Lyman, Jr., and Val R. Liljenquist, have unfairly and unlawfully competed with the plaintiff in wrongfully appropriating for their own use important elements of the form and substance of the plaintiff's business, including its confidential information, its reputation, its trademark, its production know-how, its product, its cost data, and competitive prospects, accomplished by deception, circumvention or concealment. While some of these means considered individually in other context might be within acceptable competitive standards, or might have been obtained in a legitimate way or within the competitive norm particularly in view of sometimes lax measures on plaintiff's part to protect some of its confidential information, neither in combination nor totality has said defendants' conduct been justified or lawful, and in combination and totality it has constituted unjustified breach of confidential information and unlawful and unfair competition, necessitating the fashioning of just, reasonable and equitable relief which the court concludes to be as hereinafter provided.

16. The applicable statutes of limitations had not expired as to any of the plaintiff's claims for relief.

17. Plaintiff is entitled to an injunction against the defendants Lemco Corporation, its officers, agents, attorneys, employees, associates and representatives, and each of them, and Hugh M. Lyman, Jr. and Val R. Liljenquist, restraining them from the continuance of their unfair competition. The scope of the said injunction shall be consistent with the findings of fact set forth herein and these conclusions and shall embrace all means herein determined to have been unfair and unlawful and all items, materials and designs found to have been wrongfully copied and misappropriated by the defendants with the exception indicated by paragraph 6 of these conclusions, such injunction to be permanent except as to such items and designs as the court may determine on further hearing to equitably require only transitory protection; the duration of necessary injunctive relief may depend

upon resolution of the issue of damages, and therefore should be reconsidered at that time.

18. Plaintiff is entitled to recover from the defendants Lemco Corporation, Hugh M. Lyman, Jr., and Val R. Liljenquist damages sustained and profits retained by the defendant Lemco Corporation by reason of the breach of confidential information and unfair competition up to the time of discontinuance thereof, or in the alternative, for lost profits of plaintiff by reason thereof and plaintiff is entitled to an accounting with relation thereto. That the court should set down for further hearing and trial the issue of damages and related relief.

19. That relief should be denied as to the defendant Ray V. Liljenquist.

20. The foregoing disposition will be determinative of defendants' counterclaims, the defendants' additional claims of monopoly and unfair competition having heretofore been abandoned or no proof having been offered to establish them.

21. The court should specially reserve jurisdiction following entry of an interlocutory judgment in accordance with the foregoing conclusions of law to determine the matters hereinabove reserved, to fix damages and adjudicate related relief; to define the intervening rights of the defendants; to specify the duration of any injunctive relief which may be held to depend upon such intervening rights or the nature and extent of the damages to be awarded, and to determine whether attorneys' fees or costs should be awarded herein and, if so, in what amount or proportion.

22. The plaintiff is hereby directed to prepare, serve upon opposing counsel and lodge with the court within ten days a proposed form of judgment in harmony with the foregoing conclusions of law. Judgment will be settled on the 6th day of January, 1963, at 11 o'clock a. m., and a preliminary pre-trial conference will then be held on the issue of damages and related relief.